**Norbert A. OGDEN, et al., Plaintiffs,**

v.

**MICHIGAN BELL TELEPHONE COMPANY, a Michigan corporation, and Dan Grady, Defendants.**

No. 83–CV–0482.

United States District Court,
E.D. Michigan, S.D.

Oct. 16, 1984.

Michael Kubacki, Detroit, Mich., Francis M. Fitzgerald, Mount Clemens, Mich., Theresa M. Smith, Detroit, Mich., John F. O'Grady, Saginaw, Mich., for plaintiffs.

Robert M. Vercruysse, Barbara S. Kendzierski, Constance M. Ettinger, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, District Judge.

Plaintiffs commenced this action seeking retirement benefits allegedly denied in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1001 *et seq.*, and Michigan Common Law. Plaintiffs have amended their complaint twice. The second amendment was in response to this Court's decision granting defendant Michigan Bell Telephone Company's ("Michigan Bell") motion for partial dismissal pursuant to Fed.R.Civ.Proc., Rule 12(b)(6). *Ogden v. Michigan Bell Telephone Co.*, 571 F.Supp. 520 (E.D.Mich. 1983). Plaintiffs' complaint now contains, two counts. Count I alleges a violation of fiduciary duties imposed by ERISA on plan fiduciaries. *See* 29 U.S.C. § 1104. Count II avers a claim under 29 U.S.C. § 1132(a)(1)(B). Presently before the Court is defendants' motion to dismiss part of Count II pursuant to Rule 12(b)(6).

Plaintiff alleges the following facts.[1] Michigan Bell has from time to time offered its employees enhanced severance benefits under its Management Income Protection Plan ("MIPP"). Michigan Bell has used the MIPP selectively to encourage voluntary terminations by its employees, particularly those eligible for early retirement. Whenever Michigan Bell's Vice President of Personnel designates a group of employees as affected by a "resizing opportunity," the eligible employees may accept the offer of MIPP benefits at any time within the designated period. After this designated period lapses, MIPP benefits are unavailable until another "resizing opportunity" is announced.

MIPP benefits were first offered to Michigan Bell employees in the period between October 1, 1980 and December 1, 1980. Plaintiffs allege that defendant Dan Grady, the fiduciary of MIPP, thereafter informed them that MIPP benefits would never again be available. He allegedly stated that anyone considering retirement should not wait for another offering of MIPP benefits. Plaintiffs retired from their employment with Michigan Bell between March 1, 1982 and June 1, 1982 acting in reliance upon Grady's statements. On June 17, 1982, however, Michigan Bell announced that MIPP benefits would be available to employees who terminated their employment between June 1, 1982 and July 31, 1982. Although more than 800 Michigan Bell employees obtained MIPP benefits by accepting this offer, plaintiffs were ineligible for these benefits because of their earlier retirements.

Plaintiffs' first amended complaint contained three counts. Count I asserted a claim for breach of fiduciary duties in violation of ERISA. After an allegation that defendants breached their fiduciary duties, plaintiffs included six "sub-counts", A through F, which purported to be examples of the ways in which defendants breached their duties. Plaintiffs entitled each of the sub-counts with terms which are commonly associated with common law causes of action, i.e., sub-count A was entitled "equitable estoppel"; sub-count B alleged "breach of employment contract"; sub-count C claimed a "breach of employment contract"; sub-count D averred a cause for "promissory estoppel"; sub-count E set for a claim based on "innocent misrepresentation"; sub-count F asserts a claim for negligence." Previously, defendants brought a motion to dismiss these sub-counts asserting that they were state causes of action preempted by ERISA. The plaintiffs contended that sub-counts A through F

---

1. The factual presentation in this opinion is nearly identical to the Court's previous Memorandum Opinion at 571 F.Supp. 520, 520–21.

were not intended to assert state law claims, but instead alleged facts which would show a breach of fiduciary duty under ERISA. Plaintiffs argued that a body of federal common law has developed to augment the requirements found in ERISA.[2] Plaintiffs reasoned that federal courts must refer to state common law in developing the federal common law on this subject which accounted for the sub-counts found in Count I.

▮ This Court ruled that sub-counts B, C, D and E be dismissed because those allegations do not state a claim for breach of fiduciary duty under ERISA. ERISA creates two duties of a fiduciary: (i) the fiduciary must discharge his duties solely in the interest of the plan's participants, and for the exclusive purpose of providing benefits and defraying the costs of administering the plan; and (ii) the fiduciary must perform his duties with reasonable care. *See* 29 U.S.C. § 1104.[3] Since these were the exclusive bases for recovery under ERISA, the Court ordered that those sub-counts which did not conform to those requirements be dismissed. Since the statute expressly established the duties of a fiduciary, the plaintiffs could not look elsewhere to create other duties.

Count III of the first amended complaint averred a common law action for fraud. This count was also dismissed because the broad preemption of ERISA, as provided in 29 U.S.C. § 1144(a), precluded such claims.[4]

Although Count II of the first amended complaint incorporated sub-counts A through F of Count I by reference, defendant previously did not challenge the validity of any cause averred in that count. In plaintiffs' second complaint, the sub-counts are specifically set forth in Count II. According to plaintiffs, Count II asserts a cause of action under section 1132(a)(1)(B) of ERISA. Sub-count A is entitled "Equitable Estoppel" and states that defendants made material representations to plaintiffs regarding the unavailability of the MIPP, that those statements were knowingly false, that they were made with the intent of plaintiffs acting in reliance thereon, that plaintiffs did act in reliance thereon, and that plaintiffs were thereby injured. Sub-count B is labeled "Breach of Employment Contract" and asserts that defendants made statements of company policy that the MIPP benefits would not be made available again, that the "oral and written representations by the defendants became part of the employment contracts of the plaintiffs," and that Michigan Bell breached that contract by effectuating a resizing opportunity between June 1, 1982 and July 31, 1982. Sub-count C is captioned "Breach of Contract to Retire" and states in pertinent part:

2. Statements of the Defendants that no MIPP benefits would again be available had the purpose and effect of encouraging voluntary terminations of employees who would otherwise have waited until MIPP benefits were offered.

3. In exchange for the Plaintiffs' terminations, the Defendants promised that the plaintiffs would receive the same benefits by retiring immediately that they would receive if they were to terminate at a later date.

4. By the act of voluntarily terminating employment, the plaintiffs accepted the Defendants' offer for a unilateral contract, and the Defendants thereby were obligated to pay MIPP benefits to the Plaintiffs if MIPP benefits were again made available by the Defendants. The Defendants' failure to pay MIPP benefits has breached the contract ...

---

**2.** Citing *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966 (5th Cir.1981).

**3.** *Ogden v. Michigan Bell Telephone Co.,* 571 F.Supp. 520, 522 (E.D.Mich.1983).

**4.** The Court concluded:
   In sum, Congress has unequivocally indicated that ERISA preempts all state laws concerning employee benefit plans. In addition, ERISA provides a remedy for the breach of fiduciary duty which is alleged by plaintiffs in the case at bar. Accordingly, plaintiffs' claim for common law fraud is preempted by ERISA.... Defendants' motion to dismiss Count III is therefore granted. 571 F.Supp. at 524.

Subcount D is titled "Promissory Estoppel" which contends that the defendants' statements that MIPP benefits would no longer be offered were reasonably relied upon by plaintiffs, that defendants should have reasonably expected such reliance, that the statements induced plaintiffs to retire earlier than they would have, and that the early termination benefited Michigan Bell. Sub-count E is named "Innocent Misrepresentation" and states the "[r]epresentations and announcements made by the Defendants to the Plaintiffs regarding MIPP benefits were made in the context of the employment relationship and in a context of negotiation over benefits to be paid . . .", that the statements about the future unavailability of the MIPP were false, that these statements actually deceived plaintiffs, that such reliance injured the plaintiffs, and that the plaintiffs' loss inured to the benefit of defendants. Finally, subcount F is labeled "Negligence" and claims that defendants assumed a duty to use reasonable care in advising their employees about the availability of MIPP benefits, that in representing that MIPP benefits would not be available again defendants breached that legal duty, and that the breach was a proximate cause of the damages suffered by plaintiffs.

Defendants have moved for dismissal of sub-counts A through F of Count II pursuant to Rule 12(b)(6). Defendants contend that plaintiff is precluded from asserting these claims by the Court's previous ruling concerning Count I. Defendants claim that these are merely state causes of action which are preempted by ERISA and not actionable.

■ Plaintiffs' original response was similar to their answer to defendants' motion to dismiss parts of Count I. Plaintiffs argued that Count II is brought under Section 1132(a)(1)(B) of ERISA which contemplates a federal common law that adopts state law concepts. Plaintiffs' position was that all the concepts in sub-counts A through F were actionable as independent causes of action. Plaintiffs contended: "State law concepts appear throughout Count II because these state law concepts are the only logical source of the federal common law of contract applicable to claims for benefits under employee benefit plans." Plaintiff's Response Brief, at page 7. After oral arguments on defendants' motion were heard, plaintiffs filed a supplemental brief which asserted: "Whether or not the state law headings in Count II of the amended cause of action are retained, it is proper for the court to look to those considerations in: 1. Deciding if the MIPP plan was impliedly amended; and 2. Construing the MIPP plan." Plaintiffs' Supplemental Brief, at page 7.[5]

The issue now before the Court, then, is not simply whether federal law preempts this area, but whether the federal common law should recognize claims under § 1132(a)(1)(B) as pled in sub-counts A through F of Count II. In determining this question, the scope of this legislation must be examined.

Last term the Supreme Court in *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), recognized the broad preemption of pension law by ERISA. Section 514(a) of ERISA, 29 U.S.C. § 1144(a), preempts "any and all State laws insofar as they may now or

---

**5.** Plaintiffs also posed two procedural oppositions to defendants' motion. Both contentions are meritless. First, plaintiffs argue that defendants' motion is actually an untimely motion for reconsideration pursuant to Local District Rule 17 k. According to plaintiffs, the Court already passed upon the propriety of Count II in an earlier opinion. The only issue this Court has had before it concerning Count II is whether plaintiffs are "participants" within the meaning of ERISA. The Court has not passed upon the questions presented here.

Plaintiffs' second argument is that defendants have waived their right to bring this motion under Fed.R.Civ.Pro., Rule 12(b)(6) because it was not timely filed. This contention is incorrect. Rule 12(h)(1) provides that only Rule 12(b)(2)–(5) motions are deemed waived if not raised in the first responsive pleading. Rule 12(h)(2) specifically states that a Rule 12(b)(6) motion "may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits."

hereafter *relate to* any employee benefit plan" covered by ERISA (emphasis supplied). The Court held that Congress intended § 514(a) to not only preempt state laws dealing with the subjects covered by ERISA, but all laws which directly or indirectly effect or touch upon employee benefit plans. *Id.* 103 S.Ct. at 2900–01. The Supreme Court reached this conclusion based upon the broad language of § 514(a) as well as several statements in the enactment's legislative history. For instance, Representative Dent stated: "With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent State and local regulation." *Id.* 103 S.Ct. at 2901. Senator Williams also asserted:

It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law.

*Id.*[6]

Plaintiffs do not dispute that due to this broad preemption, they must base their claims on ERISA. Instead, plaintiffs argue that Count II is based upon § 1132(a)(1)(B) which adopts state law contract principles. Section 1132(a)(1)(B) provides:

(a) A civil action may be brought—

(1) by a participant or beneficiary—

\* \* \* \* \* \*

(B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ...

Plaintiffs correctly recognize that an action under § 1132(a) is markedly different than an action for breach of fiduciary duties under § 1104. ERISA expressly establishes the duties of a fiduciary and, as this Court previously ruled, due to the broad preemptive application of the Act, it is only those actions which concern breach of those statutory duties which are actionable.[7] ERISA does not establish similar standards in regard to § 1132(a)(1)(B) claims. The plaintiffs fail to recognize, however, that § 1132(a)(1)(B) is not open ended. In order to maintain an action under this sub-section, a plaintiff must be seeking to assert rights "under the terms of his plan." The employee benefit plan itself must be the basis of such an action. As this Court stated in its previous decision: "While a body of federal common law may be developing on the subject of employee benefit plans, the content of that body of law obviously must conform to the requirements of ERISA." 571 F.Supp. at 522. Hence, insofar as sub-count C concerns a contract which is not part of the employee benefit plan, an action for a breach of an employment contract to retire is not maintainable under § 1132(a)(1)(B). *See e.g., Anthony v. Rysler Truck Lines, Inc.,* 466 F.Supp. 1287 (E.D.Pa.1979); *O'Brien v. Univac,* 458 F.Supp. 1179 (D.C. D.C.1978).

Plaintiffs support their adoption of state common law claims in Count II with two arguments. First, plaintiffs contend that concurrent jurisdiction exists in § 1132(a)(1)(B) claims because Congress viewed "[s]tate courts [as] fully competent to adjudicate claims for benefits under ERISA because they are applying a body of federal law that is identical to the common law of contract." Plaintiffs' Brief, at page 11. Plaintiffs cite the fact that federal district courts have exclusive jurisdiction over a claim for breach of fiduciary duties. 29 U.S.C. § 1132(e)(1).[8] According to plain-

---

6. *See also* 120 Cong.Rec. 29942 (remarks of Senator Javits).

7. 571 F.Supp. at 522.

8. 29 U.S.C. § 1132(e)(1) states:

Except for actions under subsection (a)(1)(B) of this section, the district courts of

tiffs, Congress expressly created the substantive law for fiduciaries and intended federal courts to apply those requirements to ensure uniformity. Plaintiffs conclude that Congress did not intend the same result by providing concurrent jurisdiction over these claims. The argument is not wholly convincing.

■ The fact that state courts have concurrent jurisdiction over federal causes of action does not mean that local law should be applied as the federal standard. For example, concurrent jurisdiction exists under § 301 of the National Labor Relations Act ("NLRA"). *E.g., Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *Harris v. Edward Hyman Co.,* 664 F.2d 943 (5th Cir.1981). Federal courts, however, have uniformly recognized that "[w]hile State courts may have concurrent jurisdiction [over section 301 case], they are bound to apply Federal law." *E.g., Avco Corp. v. Aero Lodge No. 735,* 376 F.2d 337, 340 (6th Cir.1967) *(citing Charles Dowd Box Company v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962)); *Teamsters Local Union v. Fargo-Moorehead Automobile Dealers Association,* 459 F.Supp. 558 (D.C.N.D.1978). In applying § 301, federal courts do not apply the entire panoply of the common law of contracts of the state. This application would destroy the purpose of § 301 of the NLRA, which was the uniform interpretation and enforcement of collective bargaining agreements. *See Textile Workers Union of America v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Instead, federal courts have adopted a much more guarded approach:

> We conclude that the substantive law to be applied in suits under section 301(a) is federal law, which courts must fashion from the policy of our national labor laws.... Federal interpretation of the federal law will govern, not state

law.... But state law, if compatible with the purpose of section 301, may be resorted to in order to find the rule that will best effectuate the federal policy. *Id.*

Since the purpose of ERISA parallels the NLRA, similar reasoning applies in this situation. Hence, the existence of concurrent jurisdiction, *by itself,* does not support the independent form plaintiffs plead state law concepts in sub-counts A through F. Concurrent jurisdiction may, however, indicate that the principles to be applied to this section are not so specialized or in need of uniformity to require exclusive jurisdiction in federal courts. *See e.g.,* 28 U.S.C. §§ 1334 and 1338.

Plaintiffs' second argument is based upon cases which have adopted state contract principles in applying § 1132(a). Plaintiffs rely upon cases such as *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966 (5th Cir.1981), *Murphy v. Heppenstall,* 635 F.2d 233 (3rd Cir.1980), *Holliday v. Xerox Corp.,* 555 F.Supp. 51 (E.D.Mich.1982), and *Shaw v. Kruidenier,* 470 F.Supp. 1375 (S.D.Iowa 1979). The case law established in these decisions do not provide support to plaintiffs' position. In these cases, the courts adopted certain state contract law concepts for the interpretation of the expressed terms of various pension plans. As plaintiffs concede, these courts did not recognize state law doctrines which do not relate to the application of the express terms of the plans. Plaintiffs in the instant case, however, have plead state law claims which extend beyond the express terms of the plan and concern a modification of the plan or separate contracts or duties. The reason for plaintiffs pleading their claim in this fashion is obvious. Plaintiffs do not qualify for benefits under the express terms of the MIPP, since they were not employed during its implementation. Thus, plaintiffs have attempted to plead causes of actions which would

the United States shall have exclusive jurisdiction of civil cases under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of

competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

extend or modify the MIPP beyond its expressed terms.

Defendants note that the cases relied upon by plaintiffs only apply state law concepts to interpret expressed provisions of benefit plans and further argue that a claim under § 1132(a)(1)(B) can only be based upon the expressed terms of the plan. Defendants assert that § 1132(a)(1)(B) only allows recovery under "the terms of [the] plan" which defendants argue are those expressed in the written document. Defendants combine this argument with the broad preemptive effect of ERISA to contend that plaintiffs are precluded from bringing any claim unless it is under the expressed written terms of the plan. According to defendants, state law theories of tort and contract cannot be used to alter the unambiguous terms of an ERISA plan.

The question of whether the state law claims contained in subcounts A through F should be adopted by the federal common law is a difficult one. The cases which have adopted state law standards in § 1132(a)(1)(B) claims are of limited guidance since, as mentioned, those cases concerned the interpretation of the expressed provisions of benefit plans.

■ The Supreme Court, however, has developed certain general principles to be applied when considering whether federal common law should adopt state law concepts. First, local principles of law are not appropriate when the federal program or legislative scheme requires uniform standards and applications of law. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 2289–91, 76 L.Ed.2d 476 (1983); *United States v. Yazell*, 382 U.S. 341, 354–58, 86 S.Ct. 500, 507–10, 16 L.Ed.2d 404 (1966) ("applying 'federal law' to supersede state

law typically relates to programs and actions which by their nature are and must be uniform in character throughout the Nation."); *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943). Often, state laws will vary due to the particular interests or character of the locality. Federal legislation intended to create stability and consistency cannot tolerate "great diversity in results by making identical transactions subject to the vagaries of the laws of the several states." *Clearfield Trust Co. v. United States, supra*, 318 U.S. at 367, 63 S.Ct. at 575.

■ Second, courts must consider "the specific governmental interests and [ ] the effects upon them of applying state law." *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 672, 99 S.Ct. 2529, 2540, 61 L.Ed.2d 153 (1979); *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727–28, 99 S.Ct. 1448, 1457–58, 59 L.Ed.2d 711 (1979); *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 585, 93 S.Ct. 2389, 2393, 37 L.Ed.2d 187 (1973); *United States v. Standard Oil Co.*, 332 U.S. 301, 310, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947).[9] Not only should the desirability of uniformity be explored, but also whether the "congressional purpose can best be accomplished by application of settled state rules ..." *United States v. Little Lake Misere Land Co., supra*, 412 U.S. at 596, 93 S.Ct. at 2399, *quoting, RFC v. Beaver County*, 328 U.S. 204, 210, 66 S.Ct. 992, 995, 90 L.Ed. 1172 (1946). *See U.A.W. v. Hoosier Corp.*, 383 U.S. 696, 706, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966) ("there is no reason to reject the characterization that state law would impose unless that characterization is unreasonable or otherwise inconsistent with national labor policy.").[10] "State leg-

**9.** *See also De Sylva v. Ballentine*, 351 U.S. 570, 580, 76 S.Ct. 974, 979, 100 L.Ed. 1415 (1956); *RFC v. Beaver County*, 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172 (1946); *Board of County Commissioners v. United States*, 308 U.S. 343, 351–52, 60 S.Ct. 285, 288–89, 84 L.Ed. 313 (1939); *United States v. Yazell*, 382 U.S. 341, 356–57, 86 S.Ct. 500, 508–09, 16 L.Ed.2d 404 (1966).

**10.** Generally, the need for uniformity and consideration of the federal interest or purpose coincided. *See U.A.W. v. Hoosier Corp.*, 383 U.S. 696, 702, 86 S.Ct. 1107, 1111, 16 L.Ed.2d 192 (1966). There are situations, however, when federal acts do not necessarily require uniform application to exclude the use of state law, but application of particular state or local rules

islatures [and courts] do not devise their [laws] with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." *DelCostello v. International Brotherhood of Teamsters, supra,* 103 S.Ct. at 2289, *quoting, Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977).[11]

Third, the Court should contemplate the nature of the action pursued and its analogy to state common law claims. *See DelCostello v. International Brotherhood of Teamsters, supra,* 103 S.Ct. at 2289; *U.A.W. v. Hoosier Corp., supra,* 383 U.S. at 701–03, 86 S.Ct. at 1110–12. For example, in *U.A.W. v. Hoosier Corp., supra,* the Court found the adoption of state principles of contract law appropriate in a § 301 action because "an action for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement ... closely resembles an action for breach of contract cognizable at common law." 383 U.S. at 705, n. 7.

This last consideration appears to underly the courts' reasoning in the decisions which have applied state principles of contract law to § 1132(a)(1)(B) actions. Interpreting the terms of a benefit plan to determine the rights and obligations it creates is closely akin, if not identical, to contractual interpretation. *See Woodfork v. Marine Cooks & Stewards Union, supra,* 642 F.2d at 973; *Holliday v. Xerox Corp., supra,* 555 F.Supp. at 55; *Shaw v. Kruidenier,*

*supra,* 470 F.Supp. at 1382.[12] This reasoning also bears upon the consideration of the need for uniformity and the accomplishment of the congressional purpose. Claims for breach of a collective bargaining agreement under § 301 requires a federal common law of contracts to ensure necessary consistency; however, a "district court may use forum contract law to flesh out federal principles affecting the respective rights of the parties, but only where it effectuates the policy that underlies federal labor legislation." *Kemmis v. McGoldrick,* 706 F.2d 993 (1983).[13] Similar reasoning is applicable here based upon the considerations enunciated by the Supreme Court and the parallel purpose of the NLRA to ERISA. Hence, in determining whether Michigan state law claims should be adopted which extend beyond construing the written terms of the MIPP, the Court must examine the policy and purpose of ERISA and the § 1132 private cause of action.

■ Congress enacted ERISA as a comprehensive statute designed to protect employees. *See e.g., Nachman v. Pension Benefit Guarantee Corp.,* 446 U.S. 359, 361–62, 100 S.Ct. 1723, 1726–27, 64 L.Ed.2d 354 (1980). "Congress through ERISA wanted to ensure that if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit ... he actually receives it." *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 510, 101 S.Ct. 1895, 1899, 68 L.Ed.2d 402 (1981).[14] Section 1132 is one of the instruments Congress provided to im-

would defeat the congressional purpose. *See RFC v. Beaver County,* 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172 (1946).

**11.** Several cases have implicitly applied this rule in § 301 claims of the NLRA. *E.g., Kemmis v. McGoldrick,* 706 F.2d 993, 996 (9th Cir.1983); *Seymour v. Hull & Moreland Engineering,* 605 F.2d 1105, 1109 (9th Cir.1979).

**12.** In *Shaw v. Kruidenier,* 470 F.Supp. 1375, 1382 (S.D.Iowa 1979), the court acknowledged: Moreover, it was intended that federal courts would develop a body of federal substantive law in interpreting or construing private wel-

fare and pension plans.... Obviously a body of law does not spring from whole cloth. When the question is what do the terms of the plan mean, and the terms in question are not plainly inconsistent with ERISA, the Court finds no incompatibility between the pre-ERISA contract principles briefed by the parties, and the [c]ongressional purpose to invest private benefit plans ...

**13.** *See supra,* note 11.

**14.** *See* 29 U.S.C. § 1001(1).

plement that purpose. Section 1132(a)(1)(B) allows a participant to "recover benefits due to him under the terms of the plan." Defendant urges the Court to interpret the "terms of the plan" to mean only those provisions which are written in a singular, integrated document. Adoption of this absolute rule seems unwarranted. There *may be* circumstances in which employer representations and employee expectations define the terms of a benefit plan beyond the language in the document creating the plan. In this situation, federal preemption would contribute to the defeat of the congressional purpose. Moreover, the Act itself suggests the inappropriateness of defendants' hard and fast rule. The "Definitions" section of ERISA provides:

> The terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or both, to the extent that *by its express terms or as a result of surrounding circumstances* such plan, fund, or program—
>
> (A) provides retirement income to employees, or
>
> (B) results in a referral of income ...

29 U.S.C. § 1002(2) (emphasis supplied). Although this statutory language does not indicate that state law concepts should be adopted in interpreting a plan beyond its expressed terms, it does indicate, however, that Congress clearly did not intend that only the expressed written terms of a pension plan were to be covered by ERISA. Therefore, state law concepts which extend beyond the written terms of the plan may be a proper reference in § 1132(a)(1)(B) claims.

This conclusion, however, does not rescue Count II of plaintiffs' amended complaint. Sub-counts A through F assert contract or tort claims which are independent of the terms of the benefit plan. For example, sub-count F claims that defendants breached their "duty" to properly advise plaintiffs regarding the availability of the MIPP. This claim is not one to "recover benefits due to [them] under the terms of the plan" as required under § 1132(a)(1)(B). The remaining sub-counts suffer from the identical defects.[15] Therefore, Count II of plaintiffs' complaint is DISMISSED for failure to state a claim under § 1132(a)(1)(B). IT IS FURTHER ORDERED that plaintiffs are granted leave by the Court to file an amended complaint in conformity with this opinion within 20 days.

IT IS SO ORDERED.

---

15. Dismissal of all of the sub-counts is necessary because they are not properly plead under § 1132(a)(1)(B). In their supplemental briefs, plaintiffs claim that the sub-counts are various theories in which the pension plan was modified or changed. The language of the sub-counts, however, does not reflect that understanding. The sub-counts relate to contracts which are independent of the benefit plan of Michigan Bell or independent tort claims. Plaintiffs have apparently changed their position since drafting Count II and it does not reflect their new stand. This situation has placed plaintiffs in the inconsistent posture of both defending the sub-counts as drafted, while presenting their new theory of plan modification. This has led to confused arguments by plaintiffs. For instance, plaintiffs stated in their Supplemental Brief, at page 1, "... when the employee has fulfilled all of the conditions of acceptance, but for the requirement of employment, a binding unilateral contract may exist if the employer has impliedly amended the plan." The mixing of contract theories in this passage and their relationship to Count II as plead, is difficult, if not impossible, to reconcile.