**Runi J. KREML, Plaintiff,**

v.

**DIAMOND SHAMROCK
CORPORATION,
Defendant.**

No. 86 C 1134.

United States District Court,
N.D. Illinois, E.D.

Dec. 15, 1988.

Robert A. Holstein, John M. Mack, Bruce Wolf, Holstein, Mack & Associates, Chicago, Ill., for plaintiff.

William G. Swindal, Kearney W. Kilens, Peter D. Sullivan, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Runi J. Kreml brings this action against defendant Diamond Shamrock Corporation ("Diamond") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. This court dismissed plaintiff's original and first amended complaints, alleging common law causes of action, on the grounds that their claims were preempted by ERISA, 29 U.S.C. § 1144(a). *See Kreml v. Diamond Shamrock*, No. 86 C 1134, Minute Orders (November 19, 1987, August 18, 1988). Plaintiff has now filed a two-count second amended complaint. Diamond has moved to dismiss both counts pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion will be granted and the case dismissed with prejudice.

## BACKGROUND

Plaintiff's husband, Donald Kreml, was employed by Diamond from June 8, 1964, until his death on May 26, 1984. At the time of his death, and for many years prior to it, he was the plant supervisor at Diamond's plant in Frankfurt, Illinois.

While Donald was employed with Diamond, the corporation offered its employees various benefit plans, including accidental death and dismemberment insurance and voluntary group accident insurance. As sponsor of these plans, Diamond distributed to its employees an employee handbook. The handbook provided a general summary of the various plans.

The chapter of the handbook entitled "Life Insurance Benefit Program" stated that all employees received the following insurance coverage:

*Basic Life Insurance Coverage*

If you die, your beneficiary will receive an amount equal to 30 times your monthly base wage or salary (2–½ times your annual base wage or salary).

*Accidental Death and Dismemberment Insurance (AD & D)*

If your death is due to an accident, and occurs within 90 days of the accident, your beneficiary also will receive an amount equal to 12 times your monthly base wage or salary (1 times your annual base wage or salary), up to a maximum of $20,000.

The plan provides dismemberment benefits if you should suffer any of the following losses within 90 days of an accident.

| If you Lose | The plan will pay an amount equal to this part of your annual base wage or salary ($20,000 maximum) |
|---|---|
| both hands | 100% |
| both feet | 100% |
| one hand and one foot | 100% |
| sight of both eyes | 100% |
| one hand and sight of one eye | 100% |
| one foot and sight of one eye | 100% |
| sight of one eye | 50% |
| one hand | 50% |
| one foot | 50% |

Accidental Death and Dismemberment Insurance will not pay benefits in the event of death or injury resulting from:
* Suicide or attempted suicide
* War (including undeclared war and armed aggression)
* Bodily or mental infirmity or disease
* Infection other than pyogenic infection or accidental cut or wound.

\* \* \* \* \* \*

*Claims*

In the event of your death, your beneficiary should notify the Human Resources Department or the Human Resources Representative where you are employed as soon as possible. The appropriate forms will then be filed with the insurance company.

At the time of his death, Donald also was covered by the Voluntary Group Accident Insurance Plan. The employee handbook described the policy as follows:

*Coverage*

The Voluntary Group Accident Insurance Plan provides protection worldwide, 24 hours a day, every day of the year, for loss resulting from accident in the course of business or pleasure, on or off the job, in or away from home, including but not limited to commuting, traveling by train, bus, automobile, or other public or private conveyance. It also covers accidents while riding as a passenger (but not as a pilot or crew member) in, including boarding or alighting from, any aircraft being used for the transportation of passengers.

*Exclusions*

The policy does not include loss resulting from:

* Self-inflicted injuries
* Suicide or any attempted threat
* Serving on full-time active duty in the armed forces
* Serving as a pilot or crew member of any aircraft (except full-time corporate pilots and crew members of Diamond Shamrock may be insured while flying on company business).

    *     *     *     *     *     *

*Filing A Claim*

Contact the Human Resources Benefit Department to ensure that all claim forms are completed and filed with the insurance company in a timely fashion.

In both the Voluntary Group Accident Insurance Plan chapter as well as the Life Insurance Benefit Program chapter, employees were advised to "[s]ee 'Additional Information' section for Plan details." The "Additional Information" section provided, in a subsection entitled "Claims and Appeals," that:

> If your benefits under the plan are in question, you should discuss the matter with the Human Resources Benefit Department.
> If your claim for benefits is denied (in whole or in part), you will receive—within 90 days after receipt of your claim (180 days if special circumstances apply) —a written explanation detailing
> * The specific reasons for the denial,
> * The specific references in the plan document to support these reasons,

> * The additional information you must provide to improve your claim and the reasons why that information is necessary, and
> * The procedure available for a further review of your claim.
> You have a right to appeal that denial by submitting a written application within 60 days after your claim has been denied. You should submit your application to the:

    *     *     *     *     *     *

> * Prudential Insurance Company of North America for Group Life and AD & D Plan claims.
> * Insurance Company of North America for Travel Accident and Voluntary Group Accident Insurance Program claims.

In May, 1984, Donald had the maximum $300,000 of coverage under the voluntary accident insurance plan. On May 26, Donald died following a fall from a ladder in his home. Plaintiff, the beneficiary of both of Donald's insurance plans, then wrote to Diamond's Human Resource Manager requesting information about the proper claim procedures with respect to the two plans. Attorneys for the company informed her that claim decisions for both insurance policies were made by the insurance company. It was at this time that plaintiff first learned that the Insurance Company of North America ("INA") was the insurer of the two plans. (Although the Additional Information section had stated that Prudential was the insurer for the AD & D Plan, INA had subsequently become the insurer for that plan as well).

INA refused to pay plaintiff under either the Accidental Death and Dismemberment Insurance provision of the Life Insurance Benefit Program or under the Voluntary Group Accident Insurance Plan. (No mention is made in the pleadings as to whether plaintiff recovered under the Basic Life Insurance Coverage provision of the Life Insurance Benefit Program.) The insurance company maintained that Donald died as a result of a cardiac arrest which he suffered at the time of his fall from the ladder, and that this cause of death was

not covered by the accidental death policies.

Plaintiff subsequently brought suit against INA in federal court, *Kreml v. Insurance Company of North America*, No. 85 C 3749 (N.D.Ill.1985), seeking payment under the two policies. On August 29, plaintiff and INA entered into a "General Release." In the release INA agreed to pay plaintiff $187,500. The release also provided, in pertinent part:

1. Plaintiff hereby releases and forever discharges Insurance Company of North America (hereinafter referred to as "INA") and its affiliates, parents, divisions, predecessors, successors, assigns, officers, directors, employees, agents, representatives and attorneys (hereinafter collectively referred to as "Releasees") from any and all claims, demands, obligations or causes of action of any nature whatsoever, known and unknown, whether based on a tort, contract, statutory or other theory of recovery, and whether for compensatory, punitive, statutory or other form of damages or relief, whether legal or equitable. . . .

2. By this instrument Plaintiff releases and intends to release solely those persons and entities referred to in paragraph 1 above.

\*     \*     \*     \*     \*     \*

6. Plaintiff executes and agrees to this Release and accepts payment of the sum specified, acknowledging its receipt and sufficiency as a complete compromise of matters involving disputed issues of law and fact and fully assumes the risk of any mistake of law or fact.

\*     \*     \*     \*     \*     \*

After the settlement of the lawsuit, plaintiff again wrote to Diamond's attorneys requesting information on her husband's insurance coverage. The company responded that it viewed the release in that action as a release of all claims under both policies. The company did not inform plaintiff of any available administrative procedures for appealing this decision.

Plaintiff then filed this suit. Her second amended complaint alleges, in Count I, that Diamond breached its fiduciary duty under ERISA, 29 U.S.C. § 1104, by failing to provide Donald with insurance coverage as described in the employee handbook and, in Count II, that Diamond breached the terms of its contract with Donald as set forth in the handbook. Diamond has moved to dismiss on four grounds: first, that both Counts are barred by the terms of the General Release given by plaintiff to INA; second, with regard to Count I, that Diamond's benefit program book did not misrepresent or misstate the coverage afforded to Donald; third, again with regard to count I, that plaintiff has failed to exhaust administrative remedies; and finally, that Count II is preempted by ERISA.

## DISCUSSION

▆ Diamond's first argument—that the General Release plaintiff executed in the case against INA bars this action—merits little discussion. The General Release specifically provides that it applies only to INA and its representatives; Diamond, as a purchaser of the insurance from INA, was neither, so the General Release does not bar claims against it. *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 347, 91 S.Ct. 795, 810, 28 L.Ed.2d 77 (1971) ("The straightforward rule is that a party releases only those other parties whom he intends to release."). Furthermore, the General Release provides that it was a "complete *compromise* of matters involving disputed issues of law and fact" (emphasis added), not a complete satisfaction—i.e., "an acceptance of full compensation for the injury." *Prosser on Torts*, § 49 at 301 (4th ed.). Thus, plaintiff still has a right to seek recovery of the additional $132,500 she claims to have been damaged by Diamond's wrongdoing. Finally, although Diamond insists that the General Release destroys its right of reimbursement or subrogation against INA, it neither explains how this is so nor cites any law to the effect that, even if it is, it renders the release invalid. Accordingly, Diamond's first argument for dismissal cannot prevail.

▆ Diamond's third argument—that plaintiff has failed to exhaust her administrative remedies and thus cannot proceed

with her ERISA claim—is similarly unavailing. Both before and after her suit against INA, plaintiff wrote Diamond of her desire to collect on Donald's insurance policies. The first time, she was told that she would have to proceed against INA. The second time she was informed that Diamond considered the General Release a complete bar to any claims against the company. At no time, at least according to the complaint, did Diamond's attorneys or representatives indicate to plaintiff that she had a right to appeal those decisions within the company. And although it is apparently Diamond's position that the reason no further information on intra-company appeals was provided was because the proper route for insurance claims was through the insurance companies directly, that argument is relevant to Diamond's status as a fiduciary (about which more later), not to the failure to exhaust argument. Plaintiff had no further administrative remedies available to her in her claims against Diamond, so she has a right to proceed to the merits here.

Before turning to Diamond's second, and most important, argument—the attack on Count I—the court will, for the sake of clarity, dispose of the fourth: that ERISA preempts plaintiff's breach of contract claim in Count II. In dismissing plaintiff's amended complaint, this court ruled that plaintiff could not merely invoke ERISA's jurisdictional provision, *see* 29 U.S.C. § 1132(e)(1), and then allege common law causes of action, because "[a]lthough federal courts must look to state law *concepts* in enforcing the provisions of ERISA, they may not adopt state law *doctrines* as independent causes of action." *Kreml v. Diamond Shamrock,* No. 86 C 1134, Minute Order (August 18, 1988) (citing *Ogden v. Michigan Bell Telephone Co.,* 595 F.Supp. 961 (D.Mich.1984)). The ruling then stated that "[w]hile this court recognizes that 'ERISA is a voluminous document—a complex, technical piece of legislation,' Coleman, *Primer on Employee Retirement Income Security Act* 1 (2d ed.), and that its development is still in its early stages, the court will not allow plaintiff to shift the entire burden for deciphering and applying the statute to defendant and this court." *Id.* This court concluded its ruling by

warning plaintiff that, while she would have another opportunity to amend her complaint, "she (really her attorney) would be well-advised to educate herself more thoroughly regarding the intricacies of ERISA." *Id.*

Count II ignores this court's admonition. In it, plaintiff alleges that "Diamond's offer [of the insurance plans in the employee handbook] and Donald Kreml's acceptance [of them] constitute binding contracts," and that "Diamond breached its contracts with Kreml by failing to provide the life insurance policies promised in Diamond's employee handbook." She makes no reference to any ERISA provision, nor does she, in her memorandum in opposition to the motion to dismiss, explain whether she intends this count as a second claim under ERISA that Diamond breached its fiduciary duties or, instead, as a contract claim under Illinois (or perhaps federal?) common law. *See* Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("Pl. Resp. Mem.") at 12 ("Whether a common law contracting party or governed by ERISA, Diamond is responsible for providing the benefits described in the employee handbook.").

To the extent plaintiff intends this count as a common law claim for breach of contract, she has directly flouted this court's ruling that such a claim is preempted by ERISA, 29 U.S.C. § 1144(a); *see also Gors v. Venoy Palmer Market, Inc.,* 578 F.Supp. 365 (E.D.Mich.1984) (claim that employer breached the terms of its contract with employee as set forth in the summary description of an ERISA plan is subject to federal jurisdiction under § 1132(a)(1)(B) because the summary description might amend the rights of the employee under the plan), (relying on *International Association of Bridge, Structural and Ornamental Iron Workers Local 111 v. Douglas,* 646 F.2d 1211 (7th Cir.), *cert. denied,* 454 U.S. 866, 102 S.Ct. 328, 70 L.Ed.2d 166 (1981)). As a contract claim, then, Count II cannot stand.

■ Moreover, even were this court to read Count II as a claim for breach of fiduciary duty, the count contains a funda-

mental flaw. Unlike Count I, which alleges that Diamond misrepresented in its employee handbook the true coverage provided by the insurance policies, Count II alleges that, whether misrepresentative or not, the statements in the employee handbook entitle plaintiff to enforce their terms directly against Diamond pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B). Yet, to state a claim for breach of fiduciary duty against Diamond for failing to pay the insurance claims, plaintiff must first prove that Diamond acted as a fiduciary in resolving such claims. She cannot.

As an employer providing information regarding employee benefit plans, Diamond was acting in a fiduciary capacity with respect to its description of the plan. *See* 29 U.S.C. §§ 1022, 1104, 1109; *Allen v. United Mine Workers of America 1979 Benefits Plan*, 726 F.2d 352, 355 (7th Cir. 1984); *Gors v. Venoy Palmer Market, Inc.*, 578 F.Supp. 365 (E.D.Mich.1984); *Allen v. Atlantic Richfield Retirement Plan*, 480 F.Supp. 848 (E.D.Pa.1979), *aff'd*, 633 F.2d 209 (3d cir.1980). Because the plans clearly provided that the resolution of insurance claims was the function of the participating insurance companies, however, Diamond was not a fiduciary in this regard.[1] *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323 (9th Cir.1985) ("Once [plaintiff's employer] appointed the Plan Administrator and gave him control over the Plan, [the employer] was no longer a fiduciary because it retained no discretionary control over the disposition of claims."); *see* 29 U.S.C. § 1002(21)(A)[2]; *United Independent Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1266–67 (7th Cir.1985).[3] Accordingly, plaintiff simply cannot state a claim for breach of fiduciary duty against Diamond for its—or INA's, *see* 29 U.S.C. § 1105—decision not to honor plaintiff's claim for benefits under the two accidental death insurance policies. Count II is dismissed.

■ The gravaman of plaintiff's complaint lies in her allegations in Count I that Diamond breached its fiduciary duty under ERISA by misrepresenting in its employee handbook the nature of the coverage provided by the accidental death insurance policies. Since, as noted above, Diamond did have a fiduciary duty to accurately and adequately inform its employees of the nature of the benefit plans, *see also Morse v. Stanley*, 732 F.2d 1139, 1147 (2d Cir.1984), plaintiff has at least alleged a viable ERISA claim in this count. Nevertheless, the complaint and its attachments, even viewed in a light most favorable to her, simply do not support her claim.

1. Even were Diamond the "named fiduciary" of the benefit plans, and hence a fiduciary "for all purposes," *Arakelian v. National Western Life Insurance Co.*, 680 F.Supp. 400, 404 (D.D.C. 1987), Diamond would still not be liable for INA's rejection of plaintiff's claims. *See* 29 U.S.C. § 1105(c):

    (1) The instrument under which a plan is maintained may expressly provide for procedures ... (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan. (2) If a plan expressly provides for a procedure described in paragraph (1), and pursuant to such procedure any fiduciary responsibility of a named fiduciary is allocated to any person, or a person is designated to carry out any such responsibility, then such named fiduciary shall not be liable for an act or omission of such person in carrying out such responsibility. ...

2. 29 U.S.C. § 1002(21)(A) provides:

    [A] person is a fiduciary with respect to the plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under § 1105(1)(B) of this title.

3. *See also District 65, UAW v. Harper & Row Publishers, Inc.*, 670 F.Supp. 550, 555 (S.D.N.Y. 1987) ("ERISA imposes fiduciary status on an employer only when and to the extent that the employer itself exercises discretion or control with respect to an activity enumerated in the statute."); *Blue Cross v. Peacock's Apothecary, Inc.*, 567 F.Supp. 1258, 1266 (D.Ala.1983) (insurance company with "authority under the employee benefit plans to review and determine the resolution of denied claims" was ERISA fiduciary).

Count I is predicated on alleged differences between the handbook's summary description of the accidental death insurance policies and the actual contents of the policies. According to plaintiff, although the summary descriptions clearly provided that a death such as the one suffered by Donald would be covered by the policies, the policies did not, in fact, cover his death. In this regard, plaintiff alleges in her complaint that Donald died as a result of a fall from the ladder and that, contrary to the employee handbook's representation that such an accidental death would be covered, INA subsequently refused to honor her claim.

Yet, the exhibits attached to the complaint, and plaintiff's arguments in her opposing memorandum, make clear that plaintiff's allegations do not tell the whole story. To be sure, Donald did die after falling from the ladder, but the reason INA rejected her claim was because Donald died of a cardiac arrest. In INA's view, a cardiac arrest, even one following a fall from a ladder, is not an "accidental death" for the purposes of the accidental death insurance policies.

Now, it matters not one wit whether INA was right, or even justified in taking this position—that issue was the subject of the lawsuit against INA and, as discussed above, cannot give rise to a claim against Diamond. All that matters here is whether the employee handbook misrepresented the nature of the coverage. *Zittrouer v. Uarco Inc. Group Benefit Plan*, 582 F.Supp. 1471 (N.D.Ga.1984); *see* 29 U.S.C. § 1022(a)(1) ("The summary plan description shall ... be written in a manner calculated to be understood by the average plan participant and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.").

In seeking to show misrepresentation, plaintiff does not provide this court with a description of the actual insurance policies. Yet, even the scant information about the policies that can be gleaned from her complaint and attached exhibits reveals that the handbook was not misleading—at least not in a way constituting a breach of the duty to provide a summary description of the plan.

If Donald's death were caused by the fall from a ladder, then both the employee handbook and the insurance policies provide that plaintiff was entitled to recover under the policies. On the other hand, if Donald's death were caused by a heart attack, then both the handbook and policies would exclude plaintiff from recovering for it as an "accidental death." There is nothing misleading here.

Plaintiff contends, however, that the handbook was misleading inasmuch as it did not specify that "employees who had pre-existing heart conditions would not be covered if traumatic falls from ladders caused cardiac arrest." Pl.Opp.Mem. at 6. It is true that nothing in the employee handbook specifically stated that this situation was not covered by the policies. Yet, such specificity simply is not required in an employer's summary description of an ERISA plan. *See Morse v. Stanley*, 732 F.2d at 1147–48; *Allen v. Atlantic Richfield Retirement Plan*, 480 F.Supp. 848 (E.D.Pa.1979), *aff'd*, 633 F.2d 209 (3d Cir. 1980). Thus, even assuming that, unlike the employee handbook, the insurance policies specifically provided that the sort of death suffered by Donald would not be covered—and this we do not know because plaintiff has not seen fit to inform us—Diamond did not violate its fiduciary duties by failing to set forth this exclusion in the handbook.

## CONCLUSION

Diamond's motion to dismiss is granted. The case is dismissed with prejudice.